UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**KENNETH E.,**

                Plaintiff,

vs.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

                Defendants

Case No.3:22-cv-01161-MK

**OPINION AND ORDER**

---

**KASUBHAI,** United States Magistrate Judge:

    Plaintiff Kenneth E.[1] seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and Title XVI of the Social Security Act (the "Act"). The Court has the jurisdiction to review the

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

Page 1 — OPINION AND ORDER

Commissioner's decision pursuant to 42 U.S.C. §405(g). All parties have consented to allow a Magistrate Judge to enter a final order and judgement in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. 636(c). *See* ECF No. 6. For the reasons below, the Commissioner's final decision is reversed and remanded for further proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

Plaintiff's applications for DIB and SSI were denied initially and upon reconsideration. Tr. 47, 61.[2] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on May 20, 2021. Tr. 67-92. On July 23, 2021, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 47-66. The Appeals Council denied Plaintiff's request for review on July 8, 2022. Tr. 37-43. This appeal followed.

## FACTUAL BACKGROUND

Born in 1965, Plaintiff was 53 years old when he applied for benefits on August 31, 2018. Tr. 50. He alleged disability as of December 28, 2017, based on a combination of impairments including major depressive order, generalized anxiety disorder, and unspecified personality disorder. Tr. 53.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 10, provided by the Commissioner.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If

not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id*.; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of December 28, 2017. Tr. 53. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive order, generalized anxiety disorder, and unspecified personality disorder. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of impairments that met or equaled any listings in 20 CFR Part 404, Subpart P,

Appendix 1. Tr. 53-54. At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with a reasoning level of 1-2, occasional public contact, occasional contact with coworkers, and no teamwork or collaborative tasks. Tr. 55. At step five, the ALJ found that Plaintiff was unable to perform any of his past relevant work. Tr. 60. After considering Plaintiff's age, education, work experience, and RFC, the ALJ found that a significant number of jobs existed in the national economy which Plaintiff could perform despite his combined limitations, including hand packer, laundry worker, and battery stocker. Tr. 60-61. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 61.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly formulating the residual functional capacity ("RFC"); (2) improperly weighing medical opinion evidence; and (3) failing to properly evaluate his allegations of disability.

### I.  Formulation of Residual Functional Capacity

Plaintiff first argues that the ALJ improperly formulated his RFC by failing to account for limitations that were established by physicians whom the ALJ found persuasive. Pl. Br., at 3 (ECF No. 16). The RFC reflects a claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e). To determine this, the ALJ must consider all impairments, including those that are not considered severe. 20 C.F.R. §§ 1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p.

Plaintiff argues that the ALJ's RFC failed to capture the full extent of his social limitations as assessed by the state agency psychologists. Here, state psychologists Susan South, PsyD, and Ben Kessler, PsyD reviewed Plaintiff's records and opined that he was capable of

working with "basic workplace routines and schedules" and only "brief and routine encounters." Tr. 95, 132. The ALJ credited these opinions, noting that both psychologists found that Plaintiff could perform "simple tasks" with "less than frequent contact with the public and coworkers." Tr. 59. Despite that, the ALJ formulated an RFC limiting Plaintiff to "occasional" interactions with the public and coworkers. Plaintiff argues that this translation of his limitations from "brief" to "occasional" improperly inflated his social functioning abilities, resulting in harmful error.

While the ALJ is not responsible for reciting medical opinions verbatim, she must incorporate all credible limitations into the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (the ALJ "is responsible for translating and incorporating clinical findings into a succinct RFC"). The Commissioner cites *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2018) for the proposition that there is "no obvious inconsistency with the ALJ's finding that Plaintiff could withstand 'occasional' interactions and the doctors' finding that he could only withstand 'brief and routine' encounters." Def. Br., at 12 (ECF No. 17). In *Shaibi*, however, the Ninth Circuit based its decision on a nuanced and contextualized review of Mr. Shaibi's medical record. *Shaibi*, 883 F.3d at 1107. Here, the ALJ did not provide that same nuanced and contextualized review of Plaintiff's record. Drs. South and Kessler determined that Plaintiff had moderate limitations in his ability to interact with others, including the public, coworkers, and supervisors, and concluded that he could therefore only tolerate brief and routine social interactions. Social Security Ruling 83-10 defines 'occasionally' as "occurring from very little up to one-third of the time." 1983 WL 31251, at *5. Though the Administration does not define "brief," other district courts have elaborated on the difference between "occasional" and "brief." In *Shannon O. v. Kajakazi*, No. 2:20-cv-07691-MAA, 2022 U.S. Dist. LEXIS 61632, at *9 (C.D. Cal. Mar. 31, 2022), the court answered a similar question about the difference between the two

Page 6 — OPINION AND ORDER

classifications. After considering the opinions of other district courts based on this same question, the *Shannon O.* court held that "an activity is more demanding if it is 'occasional' than if it is 'brief' because an activity lasting up to one-third of the workday could not also be classified as 'brief.'" *Id*. at *9. Additionally, based on the plain meaning of the word "brief," the credited medical evidence indicates that Plaintiff can endure only short-lived interactions with the public or coworkers. Because the ALJ credited the opinions of the state agency psychologists that Plaintiff was limited to brief and routine encounters, the ALJ was required to incorporate those limitations into Plaintiff's RFC. The ALJ's limitation to "occasional" social interactions does not specify whether these occasional interactions can be lengthy or brief. This was error.

The Commissioner argues that any error in the ALJ's RFC formulation was harmless because the jobs identified in step five of the sequential evaluation do not conflict with the social limitations suggested by Drs. South and Kessler. At step five, the ALJ found that Plaintiff could perform the representative occupations of hand packager, laundry worker, and battery stocker. Tr. 60-61. According to the Dictionary of Occupational Titles, at least one listed activity or task required by all three jobs require more than "brief and routine" interactions. For this reason, the Commissioner's argument fails and the ALJ's failure to include Plaintiff's limitations on social interactions into the RFC by limiting him to "occasional" interactions was harmful error.

**II.      Medical Opinion Evidence**

Plaintiff next argues that the ALJ incorrectly weighed the evidence provided by Dr. Burns and Counselor Carmichael, who provided testimony regarding Plaintiff's inability to maintain requisite attendance at work. Tr. 1139, 1955. Dr. Burns testified that Plaintiff would be unemployable because of his inability to remain at work or stay on task while he was at work. Tr. 1149. Similarly, Counselor Carmichael's testimony stated that Plaintiff would be unemployable

because of his tendency to be off task for significant portions of the workday or to miss more than 2 days of work a month. Tr. 1956.

Because Plaintiff's complaint was filed after March 27, 2017, when considering the medical evidence of this case, the ALJ was required to consider that evidence under the new medical regulations. The new regulations specify that when evaluating medical evidence from a medical source, an ALJ must consider the following factors: consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. § 416.920c(c), 404.1520c(c). Though the ALJ need not address all factors in their opinion, they must address the supportability and consistency factors. 20 C.F.R. § 416.920c(b), 404.1520c(b)(2).

Here, the ALJ properly weighed the medical opinion evidence because she sufficiently addressed supportability and consistency. Although the ALJ did not specifically say that she was addressing those two factors, the content of her analysis of the medical opinion evidence included supportability and consistency. For example, in her analysis of both opinions she states, "Dr. Burn's opinion is inconsistent with the reports…" and "Ms. Carmichael' s opinion is inconsistent with the reports…" and then provides support for those assertions. Tr. 59. Further, in both sections of the ALJ's analysis, she provides information about Plaintiff's behaviors from the reports that do not support the opinions provided by either source. This addresses the supportability of the opinions and their consistency with the record as a whole. The Court

therefore finds that the ALJ accurately weighed the medical opinion evidence of Dr. Burns and Counselor Carmichael in accordance with the appropriate regulations.

### III. Plaintiff's Testimony

Plaintiff also argues that the ALJ erred by discounting his subjective symptom testimony. When considering a claimant's subjective symptom testimony, an ALJ must follow a two-step process in evaluating the claimant's allegations: first determining if the symptoms are consistent with the record; and second, understanding the severity of the symptoms. 20 C.F.R. §§ 404.1529, 416.929. Because symptoms such as pain or those involving mental health are "subjective and difficult to quantify," the ALJ must consider a claimant's testimony about the severity of the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.1529(c)(3). Because subjective symptoms are not amenable to objective measurement, the ALJ is held to a high standard for rejecting such testimony – specific, clear and convincing reasons. *Trevizo v. Berryhill*, 871 F.3d at 678 (9th Cir. 1996) (citing *Garrison v. Colvin*, 759 F.3d at 1014-15 (9th Cir. 2014)). The clear-and-convincing legal standard is "the most demanding required in Social Security cases . . . It is not an easy requirement to meet[.]" *Garrison*, 759 F.3d at 1015. However, if the ALJ's credibility finding is specific, clear, and convincing, and supported by substantial evidence in the record, the court may not engage in second-guessing. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ found that a medically determinable impairment could have caused Plaintiff's issues but determined that his testimony regarding the severity of his symptoms was not consistent with the medical record. Tr. 56.

Plaintiff testified that he was unable to work due to his "overwhelming" depression and anxiety. *Id*. Plaintiff explained that he "feels paralyzed and is unable to focus" when his anxiety is triggered. *Id*. In rejecting Plaintiff's mental health symptom testimony, the ALJ suggested that

his testimony was unreliable because the medical record was inconsistent with his self-reports of depression and anxiety symptoms. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) (it is reasonable for an ALJ to determine a claimant is unreliable where their self-reports are inconsistent with the medical evidence); *see also Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (when assessing credibility, the ALJ may consider prior inconsistent statements concerning Plaintiff's symptoms). For instance, the ALJ noted that after beginning treatment with Klonopin and Ketamine in 2019, medical records indicated Plaintiff was noted to be improving and "doing ok". Tr. 57.

Plaintiff asserts that the ALJ failed to identify what testimony she found unreliable and explain what evidence undermined Plaintiff's complaints. However, the ALJ noted that Plaintiff testified that his mental impairments made him "unable to work". Tr. 56. The ALJ then pointed to various records where Plaintiff was reported to be acting in a manner that "suggests he would be able to interact appropriately with others" and self-reports of treatment methods making "incredible differences in his life". Tr. 56-57. Therefore, the ALJ supported her rejection of Plaintiff's testimony with examples from the record contradicting Plaintiff's alleged symptoms. *See Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (the ALJ must identify what testimony is not credible and point to what evidence in the record supports discrediting the claimant's complaints) (citations and quotations omitted). In addition, the ALJ discredited Plaintiff's symptom testimony by inferring that his ability to plan and attend trips out of the state reflected an unexplained departure from his alleged symptoms of depression and anxiety. Tr. 58. Therefore, the ALJ provided clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's mental health symptom testimony. *Lingenfelter v. Astrue,* 504 F.3d

1028, 1036 (9th Cir. 2007). The ALJ's rejection of Plaintiff's testimony does not constitute harmful error.

## REMEDY

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings, depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Lindie K. v. Kijakazi*, 2023 U.S. Dist. LEXIS 48439, *15-16 (citing *Garrison*, 759 F.3d at 1021 (9th Cir. 2014)). "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, the first condition is met because the ALJ improperly failed to address one of the reasons a reliable doctor provided that Plaintiff was disabled, and therefore improperly calculated Plaintiff's RFC. The second condition, however, is not met. The Ninth Circuit has held that remanding for further proceedings rather than for immediate payment of benefits serves a useful purpose when "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, the court finds that further proceedings are necessary for the ALJ to formulate a corrected RFC and, if necessary, take new testimony from a vocational expert as to the availability of jobs in the national economy that Plaintiff can perform. Accordingly, the Court exercises its discretion and remands this case for further administrative proceedings.

## CONCLUSION

For the reasons above, Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this <u>9th</u> day of August 2023.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States Magistrate Judge